**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**GEORGE E. WALLACE,**

                **Plaintiff'**,

**v.**                                                                        **4:05CV39**

**ROSS A. KEARNEY, II,
CHARLES N. SAPP,
RANDALL A. GILLILAND,
ANGELA L. LEARY,
and
THE CITY OF HAMPTON, VIRGINIA,**

                **Defendant.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

        This matter comes before the Court on defendants' motion to dismiss all claims against Ross A. Kearney, Charles N. Sapp, Randall A. Gilliland, and Angela L. Leary in their official capacities and motion to dismiss Count 3, of plaintiff's second amended complaint, for failure to state a claim upon which relief can be granted.  For the reasons which follow, the Court recommends that the motions be GRANTED, in part, and DENIED, in part.

        The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia by order of reference entered November 30, 2005. The Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331.

## **I.   STATEMENT OF THE CASE**

### **A.   Background**

Plaintiff is an African-American male, formerly employed as the City Manager of the City of Hampton, Virginia. Kearney is the Mayor of the City, and Sapp, Gilliland, and Leary serve as members of the City Council (hereinafter "the Council").

Plaintiff was appointed City Manager in July 1997, becoming the first African-American to serve as City Manager in Hampton. Beginning in July, 2004, several events took place that ultimately led to plaintiff's termination on February 23, 2005.

During his tenure as City Manager, plaintiff received annual performance evaluations by each member of the Council. Plaintiff alleges that he received "excellent/good" performance ratings from the Council members each year until 2004, when the racial dynamics of the Council changed.[1] Approximately one month after the newly elected 2004 council members took office, plaintiff's performance evaluation was completed. Sapp and Leary participated in the evaluation process, even though they had just taken office and purportedly lacked experience with plaintiff sufficient to support his evaluation. Plaintiff alleges Sapp and Leary, after having only served one month on the Council, did not have sufficient experience working with him to render a fair evaluation of his performance. Plaintiff's 2004 performance evaluation substantially differed from his previous evaluations due to the finding of four council members that he needed improvement in over eighty percent (80%) of the performance areas.

---

[1] Plaintiff alleges that prior to the 2004 election, three out of seven members of the Council were African-American, but after the 2004 election, only one African-American served on the Council.

As the year progressed, Kearney, Leary, Sapp, and Gilliland began discussing changes in the way the City does business, including: (1) the creation of a financial committee to oversee public spending in the City; (2) requiring the City Attorney to report directly to the Council, instead of the City Manager; and (3) requiring the clerk of the Council to report directly to the Council, instead of the City Manager. Plaintiff alleges that defendants' actions were in defiance of the City's Charter and an attempt to undermine his authority as City Manager. Defendants acknowledge that the change in reporting by the City Attorney required amendment of the City Charter.

In the fall of 2004, Leary and Kearney made public allegations that plaintiff was involved in improprieties that resulted in illegal financial reporting of revenues for the City's pavement program. Based on the allegations, the City conducted an audit of the program, which revealed that the allegations were false and that plaintiff had not engaged in improper conduct. Notwithstanding the result, the allegations and audit aroused public debate, including suggestions that the Council's actions against plaintiff were racially motivated. Residents of the City began expressing concerns at council meetings and in local newspapers. Some accused defendants of attempting to take authority from an African-American city manager and others accused plaintiff of playing the race card. It was an ugly debate. On November 10, 2004, after publically denying the allegations that their actions against the City Manager were racially motivated, defendants urged plaintiff to do the same. When plaintiff refused to exercise his right to publically deny the allegations made against members of City Council, Sapp and Kearney accused plaintiff of continuing to play the race card and contributing

to a racial divide in the City.  Plaintiff alleges that in an effort to calm the situation, he changed his mind and on November 16, 2004, he issued a statement, together with Kearney, denying that the challenges the City faced were racially charged.  The next day, plaintiff made a second statement, asserting that policy issues or initiatives emanating from the Council were "not racially motivated."

On January 24, 2005, Kearney and Vice-Mayor Joseph Spencer met with plaintiff to discuss his future with the City.  Kearney informed plaintiff that he had received the four votes needed for termination, and he advised plaintiff to leave voluntarily, rather than be subject to termination.  Plaintiff did not choose to follow the advice.  Shortly thereafter, defendants voted to place plaintiff on two weeks paid administrative leave.  During that time, defendants urged plaintiff to voluntarily resign or retire.  Plaintiff did neither.  On February 9, 2005, at a regularly scheduled council meeting, Sapp made a motion to terminate plaintiff, and the motion was seconded by Leary.  Kearney, Gilliland, Sapp, and Leary voted to terminate plaintiff and made public statements in support of their decisions.  Defendants based plaintiff's termination on his failure to deny public accusations that their actions were racially motivated.

On April 19, 2005, plaintiff filed a complaint in the United States District Court for the Eastern District of Virginia, Newport News Division, alleging that defendants violated his: (1) First Amendment right to free speech under 42 U.S.C. §§ 1983 and 1988, (Count 1); (2) First Amendment right of association under 42 U.S.C. §§ 1983 and 1988, (Count 2); and (3) Fifth and Fourteenth Amendment rights of equal protection under 42 U.S.C. §§ 1981, 1983, and 1988, (Count 3).  On May

16, 2005, plaintiff filed an amended complaint, and on July 15, 2005, defendants filed a motion to dismiss. On October 5, 2005, plaintiff filed a second amended complaint. This matter is now ripe for consideration.

### B. Issues

There are three issues in this matter:

1. Are defendants, who are being sued individually in their official capacity entitled to dismissal because plaintiff's claims under 42 U.S.C. §§ 1983 and 1988, are redundant to plaintiff's claims against the City;

2. Are defendants, who are being sued in their official capacity entitled to dismissal because plaintiff lacks standing to make a claim for injunctive relief under 42 U.S.C. §§ 1983, and 1988; and

3. Are defendants entitled to dismissal of Count 3 for failure to state a claim upon which relief may be granted?

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6), provides for dismissal of a complaint that fails "to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). A court will grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Adams v. Bain, 697 F.2d 1213, 1216 (4th Cir. 1982)(quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir.1969)). A court reviewing a motion to dismiss relies solely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985). In a motion to dismiss, the court considers the facts in the light most favorable to the plaintiff and assumes that the facts

5

alleged in the plaintiff's complaint are true. American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 229 (4th Cir. 2004) (citing Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 n.4 (4th Cir.1993)).

If the parties present and the court does not exclude matters outside the pleadings, such as documents and deposition transcripts, the motion to dismiss is treated as one for summary judgment. FED.R.CIV.P. 12(c); Pueschel v. United States, 369 F.3d 345, 354 n.3 (4th Cir. 2004) (citing Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 n.7 (4th Cir. 1988)).

## B.  Defendants Sued in Their Official Capacity

### 1. Duplicative lawsuits

Kearney, Sapp, Gilliland, and Leary argue that bringing suit against them in their official capacities is nothing more than a claim against the City and is redundant, given the fact that the City is already a named defendant in the action. Relying on an Eleventh Amendment state immunity argument, plaintiff asserts that injunctive relief is available only from individuals in their official capacities. As such, plaintiff asserts that because he is seeking injunctive relief from official policies or customs, defendants are properly named in their official capacity.

The Court finds plaintiff's arguments under the Eleventh Amendment misapplied. It is undisputed that the City of Hampton is a local governing body, not an arm of the state. (Pl. Second Amend. Compl. ¶ 13). As such, the City does not receive the benefit of state immunity provided by the Eleventh Amendment and, therefore, may be sued directly under 42 U.S.C. § 1983, for both injunctive and monetary relief. See

Leatherman v. Tarrant Cnty Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993)("unlike various government officials, municipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983"); accord Burtnick v. McLean, 76 F.3d 611, 612-13 (4th Cir. 1996).

It is well settled that pursuant to 42 U.S.C. § 1983, local governments may be sued for monetary, declaratory, or injunctive relief where the alleged unconstitutional action implements a policy, official custom, pattern, or practice of the local government. Monell v. Dept. of Social Servs., 436 U.S. 658, 691 (1978). For this reason, the prevailing view is that "there is no longer a need to bring official-capacity actions against local government officials, for under Monell, . . . local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985).

Suits against individuals in their official capacities are merely an alternative way of pleading suits against the entity of which the individual is an agent. Monell, 436 U.S. at 690 n. 55.

> As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.

Kentucky v. Graham, 473 U.S. 159, 165 (1985)(citing Monell).

In the case before the Court, because the real party in interest in this official capacity suit is the governmental entity and not the named officials, the entity's policy or custom must have played a part in the violation of federal law, and for that reason, the only defenses available to defendants in their official capacities are those

7

that the government entity possesses.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  Accordingly, based on the prevailing view, the Court finds that since the City is a named defendant, it is redundant and duplicative to sue the individual council members as well.

>    2. Plaintiff lacks standing for injunctive relief against defendants in their official capacities.

Plaintiff argues that joinder of the individual defendants is proper because he is seeking injunctive relief against the individual council members.  During the motion hearing, plaintiff argued that should he prevail, the preferred remedy is reinstatement.

Plaintiff's rationale does not apply to the instant case because he lacks standing to seek injunctive relief.  See City of Los Angeles v. Lyons, 461 U.S. 95 (1983)(holding that plaintiff lacked standing for injunctive relief because he failed to show a likelihood that he would again be subjected to such harm).  Furthermore, unlike Title VII, unlawful discharges, injunctive relief in the form of "reinstatement is not presumptively proper under 42 U.S.C.A. § 1983." 45 B AMER. JUR. 2D, Job Discrimination § 967(2005).

Plaintiff has not sufficiently alleged that there is any likelihood that he will be reinstated to his former position, or again be fired as City Manager by the Council, or otherwise subjected to unlawful discrimination at the hands of the official capacity defendants.  As the City Manager, plaintiff served at "the pleasure of the council," and any action to "remov[e] the city manager shall not be subject to review."  CITY OF HAMPTON CHARTER, Ch. 4, § 4.01.  If plaintiff were reinstated as City Manager, he would be removable at the pleasure of the Council, at any time, for essentially any lawful (not racial), reason deemed appropriate, and the decision would not be subject to review.

Defendants are, after all, elected representatives, charged with the responsibility of hiring a manager for the City of Hampton. The right to terminate accompanies the right to hire, and a decision to discharge a "city manager" is placed beyond post-discharge debate by the express language of the City Charter.

The relationship between plaintiff and the Council prior to litigation was already strained and has since become even more untenable. The existence of respect and the absence of friction between the two parties is crucial to the proper functioning of the municipal body. No reasonable possibility of a working relationship between plaintiff and defendants exists at this time, and it should not be reasonably expected that plaintiff could, or would, be reinstated to the position of City Manager by the Court should he prevail. See Duke v. Uniroyal Inc., 928 F.2d 1413, 1423 (4th Cir. 1991)("[r]einstatement has also been found inappropriate when the litigation itself created such animosity between the parties that any potential employer/employee relationship was irreparably damaged"; Hutchinson v. Amateur Elec. Supply, Inc., 42 F.3d 1037 (7th Cir. 1994)(reinstatement should not be granted "where the result would be undue friction and controversy," (citing McKnight v. Gen. Motors Corp., 908 F.2d 104, 115 (7th Cir. 1990)); see also Ellis v. Ringgold School Dist., 832 F.2d 27, 30 (3d. Cir. 1987)("the Court may deny reinstatement to a plaintiff when, for example, animosity between the parties makes such a remedy impracticable"); Hyland v. Kenner Products Co., 1976 WL 561 (S.D. Ohio 1976)(given community disruption which might result, reinstatement was denied to plaintiff-teacher who prevailed on § 1983 suit challenging her discharge.)

In addition, the position of City Manager has been filled; therefore, the position is no longer available to plaintiff. Due to the unique nature of the position, there is no other comparable position within the City into which plaintiff could be placed.

Since the Court cannot reinstate plaintiff to the City Manager position, it is without question that there is no chance that he will again be subjected to unlawful discrimination by defendants in their official capacities. "[S]uch speculation is insufficient to establish the presence of a live controversy." Lyons, 461 U.S. at 105 (citation omitted)(finding no standing because a father could not speculate that his son might flee and be endangered by police if ever arrested, just because his other son was killed while fleeing police).

Plaintiff also clearly lacks standing to request injunctive relief on behalf of any third parties. See Warth v. Seldin, 429 U.S. 490, 499 (1975)("Article III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally . . . jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury"). Accordingly, defendants' motion to dismiss Kearney, Sapp, Gilliland, and Leary in their official capacities should be GRANTED.

### C. Failure to State a Claim

Defendants argue for dismissal of Count 3, for failure to state a claim under 42 U.S.C. § 1983. Count 3 alleges that defendants deprived plaintiff of his equal protection rights by "engaging in a continuing course of race-based conduct," and placing race-based

employment conditions on plaintiff that were not placed on the City's Caucasian employees. (Pl. Second Amend. Compl. ¶¶ 185-88.)

The Equal Protection Clause provides, in relevant part, that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend XIV, § 1. In analyzing § 1983 violations of the Equal Protection Clause, a plaintiff must allege, at the outset, that he was treated differently from others who were similarly situated and that such unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); Blagman v. White, 112 F.Supp.2d 534, 538 (E.D. Va. 2000); Cleburne v. Cleburne Living Ctr. Inc., 473 U.S. 432, 439 (1985)(explaining that the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike").

To be considered similarly situated, individuals must be similar in all relevant respects. See Heyward v. Monroe, No. 97-2430, 1998 WL 841494 (4th. Cir. 1998). Defendants argue that plaintiff has failed to allege that he was treated differently from others with whom he was similarly situated. Specifically, defendants contend that the City Manager position is not similar to any other city employee position, given the "unique" responsibilities of the City Manager, as well as the fact that the position is appointed, rather than elected. As such, defendants urge the Court to find that plaintiff has failed to state a claim for the violation of his equal protection rights.

Plaintiff argues that he is not required to prove his case through a "similarly situated comparator" analysis, but he fails to provide alternatives to the similarly situated analysis or any authority

11

in support of the position he takes.  Plaintiff's reliance on <u>Romer v. Evans</u>, 517 U.S. 620 (1996), is distinguishable because in <u>Romer</u>, other similarly situated persons were easily identifiable.  Plaintiff attempts to illustrate how the facts set forth in his complaint provide direct evidence of invidious race-based discrimination.  Plaintiff's furnishing of this direct evidence does not relieve him of the burden to state that he was treated differently from similarly situated persons; it is only a method by which he can demonstrate how he was treated differently from others similarly situated.

The factual allegations set forth by plaintiff appear to be conclusory and, if true, they arguably provide direct evidence of invidious discrimination.  However, plaintiff does not detail how he is similarly situated to other Caucasian employees.  At this stage in the litigation, plaintiff's assertion that he was treated differently than other Caucasian employees is enough to survive a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure.  Nevertheless, plaintiff is short of proof.

In <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002), the Court held that a plaintiff's employment discrimination suit does not need to contain facts sufficient to establish a <u>prima facie</u> case. <u>Id.</u> at 511-12.  Rather it must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Id.</u> at 512 (citing FED.R.CIV.P. 8(a)(2)).  The Court went on to state that requiring a plaintiff to state a <u>prima facie</u> case would conflict with Rule 8(a)(2), because it merely requires a short and plain statement that "gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Id.</u> at 512 (quoting <u>Conley v. Gibson</u>, 335 U.S. 41,

12

47 (1957)); see also Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998)(holding that the statement "I was turned down for a job because of my race" was sufficient to survive a motion to dismiss in an employment racial discrimination case); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000)(agreeing with Bennett).

In Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761 (4th Cir. 2003), the Fourth Circuit provided its interpretation of Swierkiewicz in the context of a hostile work environment claim. The court explained "[o]ur circuit has not [] interpreted Swierkiewicz as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim, . . . While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief." Bass at 765.

Applying the Fourth Circuit's interpretation of Swierkiewicz in Bass, plaintiff is merely required to allege facts that support a claim for relief, not facts sufficient to prove his case. Plaintiff must state that he was treated differently from others who were similarly situated and that such unequal treatment was the result of intentional or purposeful discrimination, in order to state a claim under his equal protection rights pursuant to § 1983. Plaintiff has presented facts that allege he was treated differently from other similarly situated employees of the City (i.e. Caucasian employees) and stated facts, although disputed if true, provide direct evidence of intentional purposeful discrimination by defendants.[2] Should defendants decide to

---

[2] The Court has not found that plaintiff has plead facts sufficient to prove he is similarly situated as an evidentiary matter. That is a matter more properly reserved for the Court to decide at a later stage in the

13

challenge plaintiff's claim on the merits, as it has attempted, the opportunity to do so will be afforded defendants after discovery has been completed, when they would be entitled to file a motion for summary judgment. See <u>Sharafeldin v. Md. Dept. of Public Safety and Correctional Servs.</u>, 94 F. Supp.2d 680, 688 (D. Md. 2000)("the issue presented to a trial court in it's review under Rule 12(b)(6) of the sufficiency of the allegations of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to present evidence to support his claims." (citations omitted)).

At this point, it is premature to dismiss plaintiff's equal protection claims with discovery still outstanding that may uncover other similarly situated individuals and further evidentiary support for plaintiff's claims.[3] Considering the facts in the light most favorable to plaintiff, and assuming that the facts as alleged in plaintiff's complaint are true, it is not certain that plaintiff would not be entitled to relief on his equal protection claims. Accordingly, defendants' motion to dismiss Count 3 should be DENIED.

---

litigation, such as on summary judgment.

[3] In a case very similar to the instant case, <u>Parker v. Elgin</u>, 2005 WL 2171159 (N.D.Ill.), the plaintiff, an African-American female city manager, brought suit alleging that her termination was the product of race and gender discrimination in violation of her equal protection rights pursuant to 42 U.S.C. §§ 1981 and 1983. The plaintiff asserted that she was treated differently from other similarly situated employees (i.e. prior city managers), who were provided notices of deficiencies and the opportunity to correct the deficiencies prior to termination--courtesies not provided to her. The district court did not reject the validity of the plaintiff's claim, but on summary judgment found that she did not present sufficient evidence to support her argument that prior city managers were similarly situated to her in all relevant aspects. The Court will not address this particular theory at this time, since the parties have not raised the issue.

### **III.  RECOMMENDATION**

For the foregoing reasons, the Court recommends that defendants' motion to dismiss all counts against Kearney, Sapp, Gilliland, and Leary in their official capacities be GRANTED, and defendants' motion to dismiss Count 3, for failure to state a claim upon which relief can be granted be DENIED.

### **IV.  REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. See Thomas v. Arn, 474 U.S. 140

(1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                                        /s/
                                    **James E. Bradberry**
                                    **United States Magistrate Judge**

**Norfolk, Virginia**

**February 9**, **2006**

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of the following:

    Harry D. Butler, III, Esq.
    Tim Schulte, Esq.
    Butler, Williams & Skilling, PC
    100 Shockoe Slip
    Richmond, VA  23219


    Shepherd D. Wainger, Esq.
    Stanley G. Barr, Jr., Esq.
    Kaufman & Canoles, PC
    150 W. Main St.
    P.O. Box 3037
    Norfolk, VA  23510

    Alan B. Rashkind, Esq.
    James A. Cales, III, Esq.
    6160 Kempsville Circle
    P.O. Box 12525
    Norfolk, VA  23541


    Elizabeth H. Paret, Clerk


    By _____
        Deputy Clerk

_____, 2006